**CASE NO. 26–5555**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

KILMAR ARMANDO ABREGO GARCIA,
Defendant-Appellee.

On Appeal from the United States District Court
for the Middle District of Tennessee, Nashville Division
Waverly D. Crenshaw, Jr., U.S. District Judge, No. 3:25-cr-00115

# REPLY BRIEF OF THE UNITED STATES OF AMERICA

BRADEN H. BOUCEK
United States Attorney for the Middle District of Tennessee
United States Attorney's Office
719 Church Street, Suite 3300
Nashville, Tennessee 37203
(615) 736-5151

STANLEY E. WOODWARD, JR
Associate Attorney General

MICHAEL WEISBUCH
Deputy Associate Attorney General

ANNA L. EDWARDS
Counsel to the Associate Attorney General

Attorneys for Appellant

## TABLE OF CONTENTS


TABLE OF CONTENTS .................... i

TABLE OF AUTHORITIES .................... iii

INTRODUCTION .................... 1

ARGUMENT .................... 2

I. The District Court Erred In PresumingVindictiveness .................... 2

A. It Is Undisputed That The Charging Prosecutor Had No Stake In Abrego's Removal Challenge .................... 2

B. The District Court Erred By Purporting To Evaluate The Motives Of The Executive Branch Writ Large .................... 3

C. Presumptive Vindictiveness Does Not Apply To Initial Indictments .................... 8

D. The Decision To Indict Abrego Was Objectively Reasonable .................... 17

II. Even Assuming Presuming Vindictiveness Was Proper, The Government Rebutted The Presumption .................... 22

A. The District Court And Abrego Conflated Objective, Independent Evidence With Subjective Explanations .................... 22

B. The District Court Erred In Excluding New Evidence As Irrelevant To The Initial Charging Decision .................... 26

III. The District Court's Ruling On Actual Vindictiveness Is Now The Law Of The Case .................... 29

CONCLUSION .................... 29

CERTIFICATE OF COMPLIANCE .................... 31

DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS .................... 32

CERTIFICATE OF SERVICE ........................................................................33

## TABLE OF AUTHORITIES

**Cases** **Pages(s)**

*Abrego Garcia v. Noem,*
No. 25-1404, 2025 WL 1135112 (4th Cir. Apr. 17, 2025) .................................18

*Blackledge v. Perry*,
417 U.S. 21 (1974) .................................11

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) .................................16

*Bragan v. Poindexter*,
249 F.3d 476 (6th Cir. 2001) .................................6, 23

*Carlson v. Landon*,
342 U.S. 524 (1952) .................................16

*Gauntlett v. Kelly*,
849 F.2d 213 (6th Cir. 1988) .................................22

*Hartman v. Moore*,
547 U.S. 250 (2006) .................................7

*Immigr. & Naturalization Serv. v. Lopez-Mendoza*,
468 U.S. 1032 (1984) .................................17

*Keahey v. Marquis*,
978 F.3d 474 (6th Cir. 2020) .................................29

*Noem v. Abrego Garcia*,
145 S. Ct. 1017 (2025) .................................19

*QueerDoc, PLLC v. DOJ*,
187 F.4th 1112 (9th Cir. 2026) .................................28

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) .................................16

*Thigpen v. Roberts*,
468 U.S. 27 (1984) .......... 6

*United States v. Adams*,
38 F.3d 1217, 1994 WL 589509 (6th Cir. 1994) .......... 7, 12

*United States v. Adams*,
870 F.2d 1140 (6th Cir. 1989) .......... 4, 7, 11, 12

*United States v. Andrews*,
633 F.2d 449 (6th Cir. 1980) .......... 11

*United States v. Barner*,
441 F.3d 1310 (11th Cir. 2006) .......... 13, 14

*United States v. Carey*,
816 F. Supp. 3d 129 (D.D.C. 2026) .......... 15

*United States v. Cooper*,
461 F.3d 850 (7th Cir. 2006) .......... 4

*United States v. Esposito*,
968 F.2d 300 (3d Cir. 1992) .......... 9, 10, 17

*United States v. Goodwin*,
457 U.S. 368 (1982) .......... passim

*United States v. Jarrett*,
447 F.3d 520 (7th Cir. 2006) .......... 9

*United States v. Koh*,
199 F.3d 632 (2d Cir. 1999) .......... 3, 4

*United States v. LaDeau*,
734 F.3d 561 (6th Cir. 2013) .......... 5, 9, 11, 17

*United States v. Martinez*,
785 F.2d 663 (9th Cir. 1986) .......... 9

*United States v. Meda*,
812 F.3d 502 (6th Cir. 2015) ....................................................................28

*United States v. Mejia-Alarcon*,
995 F.2d 982 (10th Cir. 1993) ..................................................................21

*United States v. Meyer*,
810 F.2d 1242 (D.C. Cir. 1987)..................................................................14

*United States v. Miller*,
948 F.2d 631 (10th Cir. 1991) ..................................................................13

*United States v. Mincy*,
No. 24-4019, 2025 WL 3269350 (6th Cir. Nov. 24, 2025) ......................... passim

*United States v. Monsoor*,
77 F.3d 1031 (7th Cir. 1996) ....................................................................3, 4

*United States v. Nixon*,
418 U.S. 683 (1974)......................................................................................7

*United States v. O'Lear*,
90 F.4th 519 (6th Cir. 2024) .....................................................................16

*United States v. Raymer*,
941 F.2d 1031 (10th Cir. 1991) ................................................................13

*United States v. Reed*,
993 F.3d 441 (6th Cir. 2021) ....................................................................10

*United States v. S. Poverty L. Ctr., Inc.*,
No. 2:26-CR-139, 2026 WL 2280675 (M.D. Ala. Aug. 7, 2026) .............. passim

*United States v. Simpson*,
226 F. App'x 556 (6th Cir. 2007) ..............................................................13

*United States v. Suarez*,
263 F.3d 468 (6th Cir. 2001) ....................................................................26

*United States v. Villa*,
70 F.4th 704 (4th Cir. 2023) ....................................................................2, 7

*United States v. Zakhari*,
85 F.4th 367 (6th Cir. 2023) ................................................................ 11, 15, 17

*Wayte v. United States*,
470 U.S. 598 (1985)..................................................................... 8, 9, 16, 28

**Rules**

Fed. R. Crim. P. 51(b)..........................................................................................21

## INTRODUCTION

Far from rehabilitating the district court's presumptive vindictiveness ruling, Kilmar Abrego Garcia's response underscores why reversal is warranted. Much of his response consists of a misleading account of the record. But Abrego's emphasis on fact-bound arguments only reinforces that the *objective* presumption of vindictiveness cannot apply in this case or ever at this stage of proceedings. Tellingly, Abrego resorts to baseless forfeiture arguments, though the United States raised all the many independent grounds for reversal below.

The charging official—Robert McGuire—had no stake in Abrego's removal challenge. The purported stake of the Executive Branch writ large is irrelevant, and a contrary rule would radically expand the narrow presumptive vindictiveness doctrine. No initial indictment fact pattern should ever give rise to *presumptive* vindictiveness given the range of policy considerations the Executive Branch necessarily considers (and courts are incompetent to second-guess) at that stage. On top of all that, it is objectively reasonable for prosecutors to indict an alleged smuggler after he is ordered returned to the United States. Any inference otherwise is both illogical and plainly rebutted by the objective circumstances of this case. Abrego does not meaningfully address these dispositive points, except by doubling down on the district court's flawed reasoning. This Court should reverse.

## ARGUMENT

### I. The District Court Erred In Presuming Vindictiveness.

#### A. It Is Undisputed That The Charging Prosecutor Had No Stake In Abrego's Removal Challenge.

"A charging decision does not levy an improper 'penalty' unless it results *solely* from the defendant's exercise of a protected legal right." *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982). So, at the threshold, any *presumption* of vindictiveness cannot apply unless the prosecutorial decisionmaker had a "personal stake" in the defendant's protected conduct. *Id.* at 383; *see also United States v. Villa*, 70 F.4th 704, 713 (4th Cir. 2023) (the "motive" under consideration is typically "personal to the prosecutor who pursues the … charges"). There can be no "fact pattern" that would "*necessarily* give rise to a 'reasonable likelihood of vindictiveness,'" "no matter when or where that pattern . . . appeared," if the charging prosecutor had no personal stake that could support an inference that unlawful retaliation was the sole cause of a prosecutorial decision. *United States v. S. Poverty L. Ctr., Inc.*, No. 2:26-CR-139, 2026 WL 2280675, at *9 (M.D. Ala. Aug. 7, 2026).

Abrego does not dispute that McGuire lacked any personal stake in his removal challenge. (Def.'s Br., 33).[1] Abrego conceded as much below. There was

[1] This brief cites documents from this case using the form "[Document Description], [#]." *See* 6 Cir. R. 28.

"no basis" to suspect McGuire did "anything" based on animus. (Def.'s Mem. Supp. Mot. Dismiss, R.105, PageID#1252–53 n.27)[2]. The district court agreed. (Mem.Op., R.138, PageID#1525). That is dispositive.

### B. The District Court Erred By Purporting To Evaluate The Motives Of The Executive Branch Writ Large.

While again disclaiming any argument that McGuire had "[a] personal stake in vindicating prior litigation," Abrego instead relies on purported "pressure" from others to establish a "motivation" that, in Abrego's view, can substitute for such a stake. (Def.'s Br., 33–34). This cannot support presuming vindictiveness. And even if actual vindictiveness were at issue, the argument would fail because the district court never found that McGuire was prevailed upon to prosecute Abrego, let alone that McGuire would not have prosecuted Abrego otherwise.

To start, only actual vindictiveness cases have considered whether a prosecutor was prevailed upon by another official with a vindictive motive. The cases on which Abrego relies discuss the possibility of a "stalking horse" theory in that context. *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999); *see also United States v. Monsoor*, 77 F.3d 1031, 1034–35 (7th Cir. 1996) (discussing whether "ill will, whoever its bearer, actually motivated [the] prosecution); *Southern Poverty*

[2] This brief cites documents from Case No. 3:25-cr-00115 using the form "[Document Description], R.[#], PageID#[#]." *See* 6 Cir. R. 28(a)(1).

*Law Center*, 2026 WL 2280675, at *10, 14 (recognizing the possibility of a "stalking horse" theory of "actual vindictiveness"); pp. 11–13, *infra* (explaining *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989) (*Adams I*), was about actual vindictiveness).[3]

Even in the actual vindictiveness context, Abrego would need to show that McGuire "instituted a prosecution that would not have been undertaken" otherwise absent such influence. *Adams I*, 870 F.2d at 1146 (emphasis added). The authorities on which Abrego relies only reinforce that conclusion. In *Koh*, the Second Circuit ruled that a "stalking horse" theory would require showing that the prosecutor "was prevailed upon" by another, and that the prosecution would not have occurred "except for the animus." 199 F.3d at 640. And in *Monsoor*, the Seventh Circuit held that the animus of a person who makes a criminal referral is not, "without more, imputed to federal prosecutors." 77 F.3d at 1035. Instead, the defendant must show that "absent this motive, [the] defendant would not have been prosecuted." *Id.* at 1034. The court in *Southern Poverty Law Center* similarly recognized the possibility of a "stalking horse" theory when a prosecutor was directly "prevailed upon"—but

[3] Abrego himself cited *Koh* and *Monsoor* as actual vindictiveness cases below. (Mem. Supp. Mot. Dismiss, R.105, PageID#1253 n.27). Notably, both the Second and Seventh Circuits refuse to apply presumptive vindictiveness in the pretrial context altogether. *See Koh*, 199 F.3d at 639; *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006); *infra* Part II.

ruled the defendant could not support that theory merely by pointing to statements of officials outside the United States Attorney's Office. 2026 WL 2280675, at *10, *14. It follows that attenuated, amorphous "pressure" is not enough to show that a prosecutor acted "solely" because someone with animus directly prevailed upon him. *Goodwin*, 457 U.S. at 380 n.11. Applying a *presumption* that a prosecutor acted in that manner is even less warranted.

The district court used the "wrong legal standard" by attributing a presumptively vindictive motive to the decisionmaker without the required finding. *United States v. LaDeau*, 734 F.3d 561, 565 (6th Cir. 2013). The district court did not find that McGuire was "prevailed upon" to bring charges he would not have otherwise brought, and Abrego did not meaningfully attempt to show that occurred. (Mem.Op., R.312, PageID#5108–11).

Abrego now argues the district court properly found that the Office of the Deputy Attorney General "directed McGuire to indict Mr. Abrego in retaliation." (Def.'s Br., 33). But the court never made such a finding (which would be wholly unsupported by the record). That is why the court did not, and could not, find actual vindictiveness despite the its strained theory of a "tainted investigation" tracing back to "Main Justice." (Mem.Op., R.312, PageID#5095).

At most, the district court's initial ruling suggested that McGuire was "unknowingly" induced to charge. (Mem.Op., R.138, PageID#1526; *see also* Mem.Op. R.312, PageID#5101 (stating that because others were higher in the chain of command, any "oversight" effectively placed those officials in control of McGuire's prosecutorial decisions)). Even assuming the truth of that dubious assumption, Abrego cites no authority equating subconscious influence of higher-ranking Executive Branch officials with vindictiveness—let alone authority allowing a court to *assume* subconscious influence of such officials to *presume* vindictiveness as the *sole* basis for charges.

Rather, when courts have discussed the possibility of "subconscious influence" playing a role in a presumptive vindictiveness analysis, it has always been in the context of "institutional pressure" on a prosecutor who substitutes for a prior prosecutor who had a direct personal stake in the defendant's exercise of a legal right. *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001) (quoting *Thigpen v. Roberts*, 468 U.S. 27, 31 (1984)). Any such reasoning cannot plausibly be stretched to support a vague theory of subconscious influence applicable to the entire Department of Justice. A prosecutor could rarely (if ever) prove the negative that "he insulated [his] charging decision from . . . pressure" related to "the Department's mission," so the presumption would apply in many cases where the defendant had

previously exercised a legal right adverse to the Department. (Def.'s Br., 34 (quoting Mem.Op., R.312, PageID#5110–11)). That would radically expand the presumptive vindictiveness doctrine—contrary to caselaw focusing on actual "decision-makers," *United States v. Adams*, 38 F.3d 1217, 1994 WL 589509, at *2 (6th Cir. 1994) (*Adams II*); *see also id.* at *1 n.1; *Villa*, 70 F.4th at 713 (rejecting the "construct of collective knowledge"), or at least (in the actual vindictiveness context) whether such persons acted because they were "prevail[ed] upon," *Adams I*, 870 F.2d at 1146.

If it is ever proper to presume vindictive motive across the Department of Justice when a prosecutor was not prevailed upon, doing so is certainly improper when, as here, there is probable cause. In the related context of civil retaliation claims, the Supreme Court requires an "absence of probable cause" to show that the motives of another official improperly "influenced the prosecutorial decision," given the "factual difficulty of divining the influence" of such an official "upon the prosecutor's mind"—plus the "longstanding presumption of regularity." *Hartman v. Moore*, 547 U.S. 250, 262–63 (2006); *see* Opening Br., 41 n.10. There is no basis for a different approach in this context, which raises even greater separation of powers concerns given the Executive Branch's "exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974).

Even on its own terms, Abrego's theory of "pressure" rests on questionable timing assumptions and a hodgepodge of statements by others in the Executive Branch. Such fact-bound events, far attenuated from the actual prosecutorial decisionmaker, cannot support an objective presumption of vindictiveness. Abrego effectively asks this Court to "presume irregularity rather than 'regularity' in this context." *United States v. Mincy*, No. 24-4019, 2025 WL 3269350, at *7 (6th Cir. Nov. 24, 2025) (Readler, J., concurring). This Court should reject that attempt to transform the narrow doctrine of presumptive vindictiveness into a watered-down version of the actual vindictiveness standard that even the district court held Abrego failed to satisfy.

**C. Presumptive Vindictiveness Does Not Apply To Initial Indictments.**

The district court's amorphous theory of vindictive "taint" is especially misplaced in the context of the initial decision to charge Abrego. No presumption of vindictiveness can ever apply to initial indictments.

As a general matter, "the decision whether or not to prosecute . . . rests entirely in [the prosecutor's] discretion," because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of

analysis the courts are competent to undertake." *Id.* Although defendants can point to evidence of actual vindictiveness at the initial charging stage, prosecutors' initial charging decisions are too fact-specific and policy-laden to support application of a presumption "in all cases" of a similar fact pattern. *Goodwin*, 457 U.S. at 381. Unlike a criminal proceeding that has already been initiated, such that there may be "little reason to suspect" that the prosecutor's views changed for reasons other than vindictiveness, there is no baseline against which to compare a prosecutor's initial charging decision. *LaDeau*, 734 F.3d at 568.

Tellingly, Abrego's main response is a meritless forfeiture argument. (Def.'s Br., 23). But the United States plainly raised this issue below. The United States pointed to caselaw that rejects application of the presumption to initial charges. (Resp. Mot. Dismiss, R.121, PageID#1358–360 (discussing *United States v. Esposito*, 968 F.2d 300 (3d Cir. 1992); *United States v. Martinez*, 785 F.2d 663 (9th Cir. 1986); *United States v. Jarrett*, 447 F.3d 520 (7th Cir. 2006)). And the United States argued that presumptive vindictiveness exclusively addresses "the threat of retaliation when an accused exercises a right *in the course of the prosecution*." (*Id.*, PageID#1358 (quoting *Esposito*, 968 F.2d at 303–04 (emphasis added))). The United States also highlighted Abrego's failure to identify "a single case" where anyone has succeeded "on a similar claim," (*Id.*, PageID#1360), while arguing

against "extend[ing]" *LaDeau* because Abrego was "not previously charged and his indictment superseded," (*Id.*, PageID#1363). (*See also id.*, PageID#1364 (contending *Blackledge, Suarez,* and *LaDeau* "all involve cases where a superseding indictment was sought in an already pending case"); *id.*, PageID#1349 ("Almost all" of this Circuit's vindictiveness cases "involve scenarios where a defendant has *already* been criminally charged.")). At a minimum, the United States certainly raised this (purely legal) issue sufficiently to elaborate on it before this Court. *See United States v. Reed*, 993 F.3d 441, 453 (6th Cir. 2021) (this Court "typically find[s] no forfeiture on appeal" so long as "the issue" was raised, even if "a particular authority or strain of argument was not" (citation omitted)).

The district court's application of the presumption of vindictiveness at this stage would constitute plain error regardless. When Abrego confronts the question whether the presumption should apply to initial indictments, he never explains how a presumption could apply in all like cases given the multifaceted policy rationales underlying such decisions. Nor does he contest that his framework would preclude charges in many cases that happen to follow separate proceedings.

Abrego also fails to identify any Sixth Circuit decision that supports a presumption with respect to initial charges. Abrego relies on two *post*-indictment cases where prosecutors brought superseding indictments "using evidence already"

in their possession after the defense filed potentially fatal motions to suppress. (*See* Opening Br., 36; Def.'s Br., 26–27 (citing *LaDeau*, 734 F.3d at 567; *United States v. Zakhari*, 85 F.4th 367, 380–81 (6th Cir. 2023))). At most, those cases illustrate that presuming vindictiveness might be appropriate in that narrow post-indictment context. *See also United States v. Andrews*, 633 F.2d 449, 451, 454 (6th Cir. 1980) (noting in dicta that presuming vindictiveness might be appropriate where a prosecutor brings superseding charges after defendants successfully appeal bail decisions). But this Court's reference to "charging decisions" (Def.'s Br., 28 (quoting *Zakhari*, 85 F.4th at 379)), must be read in that context—and has no bearing when a defendant challenges initial charges.

That leaves Abrego to rely on *Adams I*, which he mistakenly insists was about presumptive vindictiveness. (Def.'s Br., 27–28). The word "presumptive" (or anything similar) does not appear in that opinion. To the contrary, the Court began by pointing out that a prosecution with an "actual retaliatory motivation" is impermissible. *Adams I*, 870 F.2d at 1145 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974)). The Court even noted that the objective circumstance of a criminal prosecution following the filing of a civil suit did not "suggest any misuse" of prosecutorial power. *Adams I*, 870 F.2d at 1145. Instead, the Court cited direct evidence of vindictiveness, including an affidavit from a former director of the

EEOC office who swore that the EEOC "instigated" the prosecution out of "revenge," as necessitating further discovery. *Id.* at 1146. That is why Judge Readler correctly recognized *Adams I* as an actual vindictiveness case. *Mincy*, 2025 WL 3269350, at *6 (Readler, J., concurring).

Abrego nevertheless tries to piece together snippets of language from *Adams I* and *Adams II* to argue that *Adams I* must have been about presumptive vindictiveness. (Def.'s Br., 27–28).[4] But if this Court had meant to hold that presumptive vindictiveness can apply to initial charges in *Adams I*, it presumably would have said so. The most that can be said for Abrego's dubious inference is that, 37 years ago, this Court was not clearly delineating between actual and presumptive vindictiveness (or selective prosecution). *See Adams I*, 870 F.2d at 1146 (explaining a defendant "may be entitled to discovery on the issue of selective prosecution if he introduces some evidence tending to show . . . the essential elements of the offense," and finding "some evidence of vindictive prosecution" to justify additional

---

[4] To be sure, in *Adams II*, the defendant appeared to raise a presumptive vindictiveness claim. *Adams II*, 1994 WL 589509, at *1 (a "realistic likelihood of vindictiveness"). But that is because the defendant "abandoned" her original theory that was the focus of *Adams I*. *Adams II*, 1994 WL 589509, *1. Adams's tactical shifts post-remand do not retroactively transform *Adams I* into a presumptive vindictiveness case. And this Court rejected the presumptive vindictiveness theory raised in *Adams II* because the "final decisions" were made by officials who lacked purportedly vindictive motives. *Id.*

"discovery" (alterations and internal quotation marks omitted)); *see also United States v. Simpson*, 226 F. App'x 556, 560 (6th Cir. 2007) (*Adams I* "deal[t] with a claim of selective prosecution" in ordering discovery). The *Adams* cases thus did not address, let alone resolve, the issue presented here.

The out-of-circuit cases on which Abrego relies similarly fail to support his expansive theory. (Def.'s Br., 26–27). Abrego relies on Tenth and Eleventh Circuit decisions rejecting a categorical rule against presuming vindictiveness at the pretrial stage. *See United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991); *United States v. Barner*, 441 F.3d 1310, 1317–18 (11th Cir. 2006). But the Tenth Circuit (in another case Abrego cites (Def.'s Br., 28–29)) has emphasized that "in the area of cases dealing with pretrial prosecutorial decisions, the Supreme Court generally has refused to create such presumptions." *United States v. Miller*, 948 F.2d 631, 633 (10th Cir. 1991) (citation omitted). The court held a presumption was "inappropriate" in a case "involv[ing] prosecutorial decisions made prior to trial" where the defendant was relying on "the temporal sequence of events," and that sequence involved prosecutors from three different districts. *Id.* at 634. That undermines, rather than helps, Abrego—who challenges prosecutorial decisions made prior to initial charges based on a sequence of events and statements from officials across the Department. Similarly, in *Barner*, the Eleventh Circuit's dicta

referenced "a prosecutor's decision to add charges based on the defendant's exercise of pre-trial exercise of rights," not a prosecutor's initial charging decision. 441 F.3d at 1317.[5] The United States is unaware of a case where either circuit has applied the presumption in the pretrial context—let alone to initial charges.

Although the D.C. Circuit has presumed vindictiveness in the pretrial context in *United States v. Meyer*, 810 F.2d 1242 (D.C. Cir. 1987), it has not indicated that the presumption can apply to initial charges. The D.C. Circuit upheld a presumption after plea negotiations fell through, defendants "chose to exercise their constitutional right to trial," and prosecutors added new charges. 810 F.2d at 1247. The D.C. Circuit's reasoning, which focused on post-indictment conduct, does not extend to initial indictments. *Id.* at 1246–47. Nothing in *Meyer* suggests "a prosecutorial decision" alone—rather than a "prosecutorial decision to *increase* charges after a defendant has exercised a legal right"—is sufficient to invoke the presumption. *Id.* at 1246 (emphasis added).

Thus, "nearly every other circuit refuses to apply a presumption of vindictiveness in the pretrial context." *Mincy*, 2025 WL 3269350, at *7 (Readler, J.,

---

[5] In *Barner* the Eleventh Circuit declined to decide if the presumption "can ever arise in a pre-trial setting" because doing so was not necessary to resolve the appeal. 441 F.3d at 1318.

concurring). And even the circuits that have indicated a presumption may apply before trial have not applied a presumption to initial indictments.

Abrego identifies only one decision ever taking that step—and it is an out-of-circuit district court's interlocutory order. (Def.'s Br., 29 (citing *United States v. Carey*, 816 F. Supp. 3d 129, 144 (D.D.C. 2026)). That order is erroneous for all the reasons described above. And it is distinguishable anyway. There, the defendant's purportedly "protected conduct"—flag burning—was the exact basis of his criminal charge. *Carey*, 816 F. Supp. 3d at 144. By contrast, Abrego was not charged with filing a civil lawsuit challenging his removal; he was charged with human smuggling.

Given all that, Judge Readler's concerns about extending the presumptive vindictiveness framework to the pretrial context apply with even more force here. *Mincy*, 2025 WL 3269350, at *6 (Readler, J., concurring). The Supreme Court and this Court have repeatedly warned that courts should not police core executive functions under the guise of applying the presumption. *Goodwin*, 457 U.S. at 381–82 (warning against applying an "inflexible presumption" in the "pretrial setting"); *Zakhari*, 85 F.4th at 381 (courts must be "careful about presuming vindictiveness in the pretrial context"). Judicial probing of the inner motivations of prosecutors and intra-Executive Branch communications can "chill" legitimate prosecutorial

objectives. *Wayte*, 470 U.S. at 607. And prosecutors should not be "handcuff[ed]" by past events like civil deportation challenges when they are considering whether to bring initial charges. *Mincy*, 2025 WL 3269350, at *6 (Readler, J., concurring). Applying the presumption at this stage would invite such untenable results.

The district court gave short shrift to those concerns, and so does Abrego. He argues that Judge Readler's analysis addressed only plea negotiations. (Def.'s Br., 30 n.5). But if vindictiveness should not be presumed when prosecutors add charges after plea negotiations break down, it makes no sense to presume vindictiveness "after other pretrial developments." *Mincy*, 2025 WL 3269350, at *7 (Readler, J., concurring). It makes even less sense to apply the presumption to initial charges.[6]

That is no less true when the charges follow civil proceedings relating to deportation. Deportation is not "akin" to a criminal sanction. (Def.'s Br., 30 n.5). A deportation proceeding "is not a criminal proceeding and has never been held to be punishment," *Carlson v. Landon*, 342 U.S. 524, 537 (1952), because deportation merely aims "to bring to an end *an ongoing violation* of United States law," *Reno v.*

[6] To illustrate, there is no question that the United States could have asked Abrego to agree to deportation or face criminal charges. "[T]he government does not 'punish[]' a defendant by offering a choice between two options." *United States v. O'Lear*, 90 F.4th 519, 531–32 (6th Cir. 2024) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). Thus, it makes "little sense" to presume vindictiveness due to the fact he was charged after his deportation failed. *Mincy*, 2025 WL 3269350, at *7 (Readler, J., concurring).

*Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999); *accord Immigr. & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime."). And, unlike an existing (or even prior) prosecution, removal proceedings involve completely different officials with different responsibilities from different parts of the Executive Branch. If anything, as discussed next, applying a presumption to initial charges is even less appropriate against the backdrop of unsuccessful removal.

**D. The Decision To Indict Abrego Was Objectively Reasonable.**

Even if presumptive vindictiveness could apply to initial charges, and even if the relevant decisionmaker had a stake in Abrego's prior exercise of a legal right, that "stake is only part of the equation and must be considered alongside reasonableness." *Zakhari*, 85 F.4th at 383; *see also LaDeau*, 734 F.3d at 568 (the defendant has the burden to establish that charges served no purpose other than punishment). So long as a charge is "attributable to a legitimate reason," *United States v. Esposito*, 968 F.2d 300, 305 (3d Cir. 1992), including any factor that could bear on a "prosecutor's normal assessment of the societal interest in prosecution," *Goodwin*, 457 U.S. at 380 n.11, courts cannot presume vindictiveness.

Here, the prosecution was objectively supported by legitimate concerns surrounding Abrego's return to the United States. Additionally, the United States had a strong interest in verifying that Abrego was a threat to public safety after courts voiced skepticism (but also stated that the government would have the chance to vindicate its characterizations). *See Abrego Garcia v. Noem,* No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025) ("If the government is confident of its position, it should be assured that position will prevail in proceedings to terminate the withholding of removal order."). Abrego does not address the government's interest in confirming his gang and criminal activity in the light of such judicial statements at all. And Abrego never addresses the government's argument that applying a presumption here would make a successful removal challenge a presumptive waiver of criminal liability, no matter how dangerous a returning alleged criminal may be.

Instead, he addresses only the threat to public safety posed by his return—but his arguments fail at every step. Abrego does not dispute that such factual circumstances present a legitimate basis to prosecute. Instead, he relies on irrelevant, extra-record statements by people like El Salvadorian President Bukele and former Attorney General Bondi about whether Abrego could be returned. (Def.'s Br., 39–40). Whatever was said about the possibility of return in the immediate aftermath of

the Supreme Court's order (but before the Fourth Circuit's April 17, 2025, stay denial, and before the subsequent reopening of HSI-Baltimore's investigation), the government was ultimately able to "facilitate" Abrego's return as that order contemplated, supplying an objective basis for his prosecution. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025).

Abrego's characterizations of then Deputy Attorney General Todd Blanche's public explanation that Abrego was returned "to face justice," and that El Salvador released Abrego "because of a federal arrest warrant," are equally disingenuous. (Def.'s Br., 40–41.) Even the district court framed these events as the government having "found a way . . . to comply" with court orders requiring the government to facilitate Abrego's return. (Mem.Op., R.312, PageID#5093).[7] Abrego cannot seriously hold the government's efforts to comply with such orders against the government, even if bringing Abrego back to face prosecution was the only way to comply in good faith while ensuring El Salvador's cooperation and protecting the public in light of Abrego's return. There is nothing objectively unreasonable about ensuring an alleged criminal will face justice in these circumstances.

---

[7] Of course, the district court's inference that complying with the court order and prosecuting somehow suggested vindictiveness is incorrect. (Mem.Op., R.312, PageID#5093). Federal officials did not lose their ability to prosecute just because a court order necessitated Abrego's return.

Abrego's related argument about HSI-Nashville Special Agent in Charge Rana Saoud's testimony is even more misleading. Abrego argues that Saoud testified that Abrego was "not a public safety threat." (Def.'s Br., 40 (quoting Tr., R.300, PageID#4856)). But she testified that Abrego "was in custody, so, no, he was not a public safety threat at that moment." (Tr., R.300, PageID#4856). Obviously, if Abrego were returned to the country and not prosecuted, he could have posed a threat to public safety. That is why, as Saoud explained, the government had an interest in investigating the human smuggling operation. (*See* Tr., R.300, PageID#4856).

Abrego also twists McGuire's statement that he did not know if Abrego would return. (Def.'s Br., 40). That was because McGuire wasn't "involved in that part of it," (Tr., R.300, PageID#4898)—for the same reason he lacked a personal stake. More to the point, not knowing for sure whether someone will return does not preclude making a charging decision considering their likely return.

Abrego again tries to duck the government's public safety rationale (though not its rationale about confirming Abrego was a criminal considering judicial skepticism) by way of baseless forfeiture arguments. (Def.'s Br., 34–38). Again, the United States raised the issue. Specifically, the United States argued that Abrego's prosecution was based on a "determination that he is a criminal," as his return posed "a threat to the public," which was "[c]onsistent with [Blanche's] television

statement." (Resp. Opp'n Mot. Compel Disc., R.178, PageID#1811). Having raised this argument, the United States never "abandon[ed]" or waived it. (Def.'s Br., 38); Fed. R. Crim. P. 51(b) ("informing the court" of a claim is sufficient for preservation); *see United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir. 1993) (party has no need to reraise issue to preserve it). Indeed, this rationale is reflected in Blanche's statement that the district court's own opinion highlighted (nonsensically) as a "possible admission" of vindictiveness. (Mem.Op., R.138, PageID#1526–28). The United States is entitled to argue again that the same statement provides a reasoned basis for the prosecution. And the court's failure to grapple with the objectively reasonable explanation conveyed by Blanche's statement while extensively relying on that same statement would be plain error in any event.

Abrego also tries to muddy the waters by arguing that this justification is inconsistent with the government's repeated explanation that McGuire decided to bring the charges. Not so. Whether the decision maker was McGuire or (in the district court's flawed view) the entire Department of Justice, the charging decision was objectively reasonable in light of Abrego's return to the country. As the United States argued before the district court, "even if the relevant actor were (erroneously)" viewed as the "entire government," a determination that Abrego was a "criminal,"

whose likely return threatened public safety, was non-vindictive. (Resp. Opp'n Mot. Compel Disc., R.178, PageID#1811). That position is entirely consistent with the argument that McGuire is properly understood as the relevant decision maker, and that he acted reasonably for the additional reason that he decided to bring charges after evaluating all the (previously unknown to him) evidence. By any measure and no matter to whom it is attributed, the decision to prosecute Abrego was not objectively unreasonable.

## II. Even Assuming Presuming Vindictiveness Was Proper, The Government Rebutted The Presumption.

### A. The District Court And Abrego Conflated Objective, Independent Evidence With Subjective Explanations.

"[A]n on-the-record, wholly logical, nonvindictive reason for the" challenged action sufficiently rebuts presumptive vindictiveness. *Gauntlett v. Kelly*, 849 F.2d 213, 217 (6th Cir. 1988). The United States provided a logical, on-the-record reason for charging Abrego (in addition to the reasons already discussed)—McGuire testified that he had only recently learned of the conduct and believed that the evidence strongly supported bringing charges. That was more than enough to rebut any presumption.

The court legally erred by characterizing this testimony as "subjective." (Mem.Op., R.312, PageID#5093, 5109, 5111). Abrego makes the same mistake. (Def.'s Br., 43). McGuire did not ask anyone to trust that he was always intent on

charging Abrego, or anything else about his subjective internal deliberations. Instead, he testified—and no one disputes—that he was not aware of Abrego's conduct until shortly before the charging decision. (Tr., R.300, PageID#4869). He also testified that he had "total autonomy" in bringing the charges because—as an objective matter—no one told him to do anything. *Bragan*, 249 F.3d at 484.

Even now, Abrego does not contest that no one "outside Nashville provided any input whatsoever to the charging documents." (Tr., R.300, PageID#4983). The district court didn't find otherwise. Rather, it erroneously disregarded this testimony because others "presented [some of] the evidence" and supposedly (subconsciously) "exercised control over the charging decisions." (Mem.Op., R.312, PageID#5101, 5108). This finding epitomizes the way the court "presume[d] irregularity" throughout its rulings. *Mincy*, 2025 WL 3269350, at *7 (Readler, J., concurring). The motive of one official does not become relevant merely because the official assists in coordinating DOJ resources for an ongoing investigation. That happens in many cases, especially high-profile ones. And by focusing on communications regarding, *e.g.*, "when Mr. Abrego was returned to the United States," Abrego conflates communications *in general* with communications *directing a charging decision*—for which there is zero objective evidence whatsoever. (Def.'s Br., 44).

To reiterate, McGuire objectively began his investigation without any input from DOJ. Agent Saoud called him on April 27, 2025, after reading about Abrego's traffic stop. (Tr., R.300, PageID#4862). That was *before* McGuire heard from anyone at DOJ about the case. (*Id.*, PageID#4863). McGuire also gathered license plate reader evidence to conclude that Abrego lied to troopers. (*Id.*, PageID#4877). Any evidence that Main DOJ helped present (by playing a routine coordinating role) could not have objectively obviated McGuire's role as the decisionmaker or somehow transferred purported vindictiveness. The traffic stop during which officers suspected Abrego of human smuggling was on video, (*Id.*, PageID#4864), and McGuire was "immediately struck" by how similar the recorded conduct was to other human-smuggling cases he had worked on. (*Id.*, PageID#4873). McGuire also had everything he needed to identify Hernandez-Reyes, the owner of the car whom Abrego identified as his boss on the recording, and others who implicated Abrego. (*Id.,* PageID#4878–80). The objective circumstances thus easily rebut any suggestion that McGuire (or any theorized decisionmaker) *solely* prosecuted Abrego for challenging his removal.

Abrego's suggestion that the district court made a credibility finding against McGuire is wrong. (Def.'s Br., 43). The court never found that McGuire's testimony was false. Rather, in its zeal to presume vindictiveness, it cast aside McGuire's

statements about the objective circumstances and relied on its own subjective inferences based on the structure of the Executive Branch and routine Department communications.

The district court's subjective approach reflects a problematic tendency to draw dubious inferences based on core Executive Branch functions. For example, the court demanded the prosecution explain what steps it took to "alleviate" the concerns of a dissenting subordinate (another aspect of its decision Abrego does not try to defend). (Mem.Op., R.312, PageID#5112). Ultimately, the court relied on its own subjective speculation about the inner motivations of charging officials when it assumed that McGuire succumbed to subconscious pressure because he feared being terminated for "perceived disloyalty" despite McGuire's clear testimony to the contrary. (*Id.*, PageID#5108, 5111).

The court also assumed without justification that routine DOJ "involve[ment]" in a high-profile case reflected effective (albeit indirect) control of charging decisions. (*Id.*, PageID#5099, 5101). The court took issue with an email saying, "keep a close hold until we get clearance." (*Id.*, PageID#5101). But McGuire looked for "clearance" only about "sealing the indictment" given the anticipated press reaction, not about whether to indict. (Tr., R.300, PageID#4981–83). The email exchange begins with one attorney asking about any changes to the timing of the

indictment so they can "loop in the press office." (Notice, R.315-1, PageID#5129–30). And the "close hold" comment was a direct response to maintaining "situational awareness" for looming press coverage. (*Id.*, PageID#5129).

Coordination of prosecutorial assets and access to evidence is not only common, but essential in managing a large prosecuting agency. It is not the role of a court to determine appropriate DOJ "oversight" for high-profile matters, (*id.*, Mem.Op., R.312, PageID#5108–09), or to second-guess why HSI-Nashville would open an investigation when HSI-Baltimore had a case that, in the court's view, was "significantly more developed," (*id.*, PageID#5096 n.7). That sort of "Monday-morning quarterbacking" of Executive Branch decisions and communications is contrary to the presumption of regularity—and has no place in a presumptive vindictiveness analysis. *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *7.

### B. The District Court Erred In Excluding New Evidence As Irrelevant To The Initial Charging Decision.

When the government can show "charges were not brought earlier because they are based on new evidence, it will sufficiently rebut a showing of vindictiveness." *United States v. Suarez*, 263 F.3d 468, 480 (6th Cir. 2001). Here, overwhelming new evidence surfaced that Abrego engaged in human smuggling.

Abrego does not try to defend the district court's unprecedented decision to disregard that evidence on the theory the government could have gathered it with

more diligence. (Mem.Op., R.312, PageID#5093, 5103, 5105). Instead, Abrego seeks to change that reasoning. According to Abrego, the court "found that the reboot of the investigation that generated that evidence was 'tainted' by a retaliatory motive," such that "[a]ny new evidence" could not have supported the "decision to indict." (Def.'s Br., 46).

Had this been the district court's theory, it would still be erroneous. It is bad enough to apply a presumption of vindictiveness to initial charging decisions. But with this argument, Abrego applies the presumption even earlier, to a decision to "reboot [an] investigation" that ultimately leads to charges. For all the reasons described above with respect to initial indictments, this vindictive investigation theory is unworkable and unprecedented.

Regardless, Abrego's argument rests on the unfounded premise that officials decided not to charge him in 2022 but reconsidered that decision due to his civil lawsuit. There was never a decision to not charge in 2022; the traffic stop was not referred for prosecution at all. And any delay could not preclude the government from considering new evidence, no matter the political circumstances. Otherwise, a court could effectively lock in a prior administration's lax immigration enforcement policy by finding that a delay in charging was suspicious (Mem.Op., R.312, PageID#5095), while overlooking that "presidential administrations" change, and

with them so do "enforcement priorities." *S. Poverty L. Ctr., Inc.*, 2026 WL 2280675, at *9; *accord QueerDoc, PLLC v. DOJ*, 187 F.4th 1112, 1138 (9th Cir. 2026) ("[T]here is nothing improper about a President having policy preferences and directing the Executive Branch.").

The district court likewise could not disregard new evidence based on its (incorrect) determination that such evidence did not "materially add" to the "tainted investigation." (Mem.Op., R.312, PageID#5107). The question whether new evidence can impact a prosecutor's decision is fundamentally "ill-suited to judicial review." *Wayte*, 470 U.S. at 607. Both Abrego and the district court have relied on their unqualified "interpretation of the sequence of events," but they are "not at liberty to speculate about what drove the government." *United States v. Meda*, 812 F.3d 502, 511 (6th Cir. 2015).

* * *

Abrego's arguments underscore how far the district court has strayed beyond the narrow presumptive vindictiveness doctrine. Like the district court, Abrego treats the entire Department of Justice as the relevant decisionmaker, identifies a purportedly vindictive motive in innocuous statements about protecting the public and holding criminals accountable, and applies a supposedly objective presumption to an initial charging decision (and even, apparently, the decision to reopen a

criminal investigation)—then refuses to consider objective circumstances rebutting that presumption and new evidence of guilt. No court of appeals has approved any of these steps, let alone all of them simultaneously. Abrego's theory would turn courts into superintendents of core Executive Branch functions and allow any judge to "block a legitimate response to criminal conduct." *Goodwin*, 457 U.S. at 373.

## III. The District Court's Ruling On Actual Vindictiveness Is Now The Law Of The Case.

In a last-ditch effort, Abrego argues that this Court should remand so he can pursue his actual vindictiveness defense. (Def.'s Br., 47–48). But the district court repeatedly rejected it. (*See* Mem.Op., R.312, PageID#5093 (finding "insufficient evidence of actual vindictiveness"); *id.*, PageID#5095 (the evidence fails "to establish actual vindictiveness"); *id.*, PageID#5098 (noting "the evidence falls short of actual vindictiveness")). The law of the case doctrine "precludes reconsideration of issues" that were decided already by the district court. *Keahey v. Marquis*, 978 F.3d 474, 481 (6th Cir. 2020). There is thus no basis to relitigate that already rejected defense.

## CONCLUSION

This Court should reverse the district court's order dismissing the indictment.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRADEN H. BOUCEK

s/ B.H. Boucek
United States Attorney for the Middle District of Tennessee
719 Church Street, Suite 3300
Nashville, Tennessee 37203
(615) 736-5151

MICHAEL WEISBUCH
Deputy Associate Attorney General

ANNA L. EDWARDS
Counsel to the Associate Attorney General

Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief contains 6,481 words, exclusive of the table of contents, table of authorities, and certifications, and therefore complies with the limitations on length of a brief set forth at Rule 32(a)(7)(B)(ii) of the Federal Rules of Appellate Procedure.

s/ B.H. Boucek
BRADEN H. BOUCEK
Date: November 20, 2026

## DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

Under 6 Cir. R. 28(b) and 6 Cir. R. 30(b), the United States hereby designates the following relevant district court documents in the electronic record:

| Record Entry | Description | PageID# |
|---|---|---|
| 105 | Defendant's Memorandum in Support of Motion to Dismiss Indictment | 1230–1268 |
| 121 | Affidavit in Support of Government's Response to Motion to Dismiss | 1347–1381 |
| 138 | Memorandum Opinion | 1514–1529 |
| 178 | Response in Opposition to Motion to Compel Discovery | 1794-1816 |
| 300 | Transcript of Evidentiary Hearing (Feb. 26, 2026) | 4813–4995 |
| 312 | Memorandum Opinion | 5082–5113 |
| 315-1 | Gov't Ex. 1, Evidentiary Hearing (Feb. 26, 2026) (various emails) | 5120–5133 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this brief was filed on November 20, 2026, which emailed everyone requiring notice.

s/ B.H. Boucek
BRADEN H. BOUCEK
Date: November 20, 2026